**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MARTIN J. WALSH, SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR, ) ) ) | |
| Plaintiff, ) | Civil Action No. 5:20-cv-04265 |
| ) | |
| v. ) | |
| ) | JURY TRIAL DEMANDED |
| BENE MARKET, LLC, NATIONAL BROKERS OF AMERICA, INC., ALAN REDMOND, and STEPHANIE MILLER ) ) ) ) | |
| ) | |
| Defendants. ) ) | |

**PLAINTIFF'S SECOND MOTION FOR SANCTIONS**

In light of Defendants' continued failure to satisfy their discovery obligations, obey the

Court's orders, or to pay any of the monies imposed as a sanction by this Court, Plaintiff asks the

Court to order the Clerk to enter default against Defendants.  Plaintiff further requests until

January 28, 2022 to submit a Motion for Default Judgment, at which time Plaintiff will ask this

Court to award Defendants' employees back wages and an equal amount of liquidated damages

and grant permanent injunctive relief prohibiting Defendants' future commission of violations

under the Fair Labor Standards Act.

**I.  Statement of Facts[1]**

1.  For the past year, Plaintiff has tried in vain to get Defendants to fulfil their

obligation to participate in discovery and produce relevant documents that are in

---

[1] While many of the facts listed in Plaintiff's prior Motions are included here, Plaintiff incorporates by reference the statement of facts from Plaintiff's initial Motion to Compel, filed on February 19, 2021 (ECF 16), Plaintiff's Motion for Costs and Other Sanctions, filed on June 8, 2021 (ECF 31), and the facts stipulated to by the parties in the Stipulations that were entered into evidence as Joint Exhibit 1 at the evidentiary hearing on June 30, 2021 (Exhibit A).

their custody or control.  Plaintiff first served Defendants' counsel with discovery requests on December 21, 2020, and responses to those requests were due on January 20, 2021 (Exhibit A, parties' joint Stipulation from the June 30, 2021 evidentiary hearing).

2.  On February 19, Plaintiff filed a Motion to Compel (ECF 16), in which Plaintiff requested that Defendants respond to Plaintiff's discovery requests and update their disclosures within fourteen days. In lieu of a response, prior defense counsel filed a Motion to Withdraw.  (ECF 17).  Defendants' present counsel entered his appearance shortly thereafter, and the discovery deadline was extended to April 30, 2020 (ECF 20, 22, and 23).

3.  On April 6, 2021 the parties requested that the discovery deadline in this case be extended to May 7 (Exhibit A).  This would allow Defendants to serve their written discovery responses by April 7 and produce documents in response to Plaintiff's document requests by April 9, 2021 (Exhibit A).  Defendants produced no documents on April 9 (Exhibit A).  As a result, the parties postponed the depositions scheduled for April 13 through 16 to the last week in April (Exhibit A).

4.  On April 23, Defendant produced some tax returns, valuation reports for Bene Market, LLC, and a small number of other documents (Exhibit A).  Notably, Defendants failed to produce documents that reflect Defendants' pay practices, such as employee time records, payroll records, sign-in sheets, internal paystubs, written job offers stating rates of pay, employee handbooks, and spreadsheets

Defendants submitted to their accountants each pay period for the accountants to prepare payroll (Exhibit A).

5. On May 6, 2021, Defendants filed a Motion to Extend the Time to Complete Discovery to June 6, 2021 (ECF 28; Exhibit A).  In their Motion, Defendants committed to producing all outstanding documents no later than May 12, 2021, and agreed that Plaintiff could file for costs and other sanctions to be considered by the court if they failed to do so (*Id.*).

6. Defendants failed to produce any additional documents by the May 12 deadline, and Plaintiff's counsel notified defense counsel that she intended to file a Motion for Costs and Other Sanctions on May 19, 2021.  Defendants attempted to produce additional documents on May 19, but failed to produce numerous documents due to technical issues (Exhibit A).  However, it is undisputed (*see* Exhibit A) that Defendants did not attempt to produce any of the documents identified in Exhibit A.

7. Plaintiff conducted seven depositions between April 28 and June 4, although those depositions were rescheduled multiple times due to Defendants' failure to provide complete responses to Plaintiff's discovery requests (*see* ECF 31, ECF 34, and Exhibit A).  During their depositions, Defendant Alan Redmond and Defendants' 30(b)(6) witness testified to the ready availability of the documents identified in Exhibit A—in fact, the vast majority of these documents are created by and maintained by Defendants (Exhibit A; Exhibit B, Alan Redmond

deposition excerpts; Exhibit C, 30(b)(6) deposition excerpts).[2]   Defendants

agreed to produce those documents but never did so (ECF 34; Exhibit B at 130-

31).

8.  On June 8, 2021, Plaintiff filed a Motion for Costs and Other Sanctions, in which

Plaintiff detailed Defendants' repeated failures to engage in discovery in good

faith.  The Court scheduled an evidentiary hearing for June 30, 2021 regarding

Plaintiff's motion (ECF 30).

9.   Defendants produced additional documents on June 22 and June 29, prior to the

June 30 evidentiary hearing, but obvious deficiencies remained.  Significantly,

Defendants did not produce payroll records, time sheets, internal pay stubs, or any

of the documents listed in the parties' Stipulation that was offered into evidence

as Joint Exhibit 1 at the hearing—documents that show Defendants' pay practices

for the relevant time period (Exhibit A).  In the parties' Stipulation, the parties

---

[2] An internal spreadsheet with payroll data is sent to Defendant Alan Redmond for review every two weeks, and then that data is sent to their accountants to process payroll (Exhibit B at p.270-71); Amela Anderson, Defendants' 30(b)(6) witness, creates pay stubs for each employee pay check that show gross pay, hours worked, hours missed, total login time, and bonus payments (Exhibit C at p.33-34, 77; Exhibit B at p.271); Ms. Anderson was able to send an excel sheet representing "finalized payroll" to Plaintiff's counsel during a short break in her deposition (Exhibit C at p.32); Ms. Anderson prepares and keeps copies of memos detailing bonus opportunities (Exhibit C at p.103-104); Ms. Anderson keeps daily sign-in sheets in a binder and inputs the data into HR Bamboo (Exhibit C at p.20, 133); job offer letters are in every employees' personnel file (Exhibit B at p. 137-139); If Five9 data (Five9 is software that tracks how long employees are logged in for and how long employees are on calls with customers, (Exhibit B at p.192)) is on their server, Defendants can pull it up within an hour (Exhibit B, p.283); Five9 data that is more than 60 days old (or whatever storage parameters are on their server), the data can be requested from the company because it is stored on their cloud; Defendant Redmond estimates that it would take a day for Five9 to respond to a data request— "Five9 doesn't take long" (Exhibit B at p.246, 282).  Five9 data and data from HR Bamboo is used by Defendants to prepare the payroll spreadsheet (Exhibit C at p.34).

stipulated to a list of documents that Defendants had failed to produce prior to the evidentiary hearing and the timeline of events that led to Plaintiff's Motion for Costs and Other Sanctions and the June 30 evidentiary hearing (Exhibit A).

10. On July 19, 2021, this Court granted Plaintiff's Motion for Sanctions in part and ordered Defendants to pay $2,500 in costs for "Defendant's discovery abuses," and an additional $5,000 in sanctions for each week that it fails to produce all of the documents listed in the Stipulation (ECF 38).

11. Counsel for the parties spoke on August 12 and September 1, 2021, at which time defense counsel was unable to provide any information regarding when, or even whether, Defendants would supplement their discovery responses.

12. The discovery deadline in this case was extended twice following the June 30 evidentiary hearing, to provide time for Defendants to produce outstanding documents and for Plaintiff to conduct the remaining 30(b)(6) depositions (ECF 36, 37, 39, and 40).  Discovery closed on October 30, without Defendants having produced a single document after June 29, 2021—the day before the evidentiary hearing regarding Plaintiff's first Motion for Costs and Sanctions.  Plaintiff did not go forward with the remaining 30(b)(6) depositions, since the documents counsel sought to authenticate and question witnesses about were never produced.

13. In an attempt to circumvent, at least in part, Defendants' attempts to stall this litigation via their continued refusal to produce documents relevant to their pay practices, Plaintiff has obtained some of the relevant documents from other sources via subpoena.  However, Plaintiff still does not have access to time

5

records, the rates of pay offered at the time of hire, or accurate records of bonuses or other incentive pay.

14. All available evidence indicates Defendants have not amended their pay practices to come into compliance with Sections 6 and 7 of the FLSA since the close of Wage and Hour's investigation. Accordingly, the amount Defendants owe in back wages has continued to accrue throughout this litigation. Defendants are obligated to supplement any previous responses with up to date time records, payroll records, and other information relevant to their continuing violations, but they have ignored this obligation along with their obligation to produce all relevant and responsive documents in the first place. Thus, Defendants' discovery deficiencies grow larger each day that passes.

15. Since the Court issued its July 19, 2021 Order partially granting Plaintiff's Motion for Costs and Other Sanctions, Plaintiff's counsel has contacted defense counsel on multiple occasions to request payment of the fines and production of the outstanding documents, but to no avail (Exhibit D).

16. To date, Defendants have failed to produce **any** of the documents listed in Exhibit A, and have **not paid a penny** of the **$112,500**[3] in sanctions that they currently owe, pursuant to the Court's July 19, 2021 Order (ECF 38, Exhibit D).

---

[3] The Court ordered Defendants to pay Plaintiff $2,500 to cover costs for filing discovery motions, and $5,000 per week for each week Defendants failed to produce the documents listed in the joint Stipulation (Exhibit A), beginning on Friday, July 23, 2021. Twenty two weeks have passed since July 23, 2021. Therefore, Defendants owe Plaintiff $112,500 in sanctions, $5,000 x 22 + $2,500.

## II.  Legal Argument

Given Defendants inexcusable conduct in failing to satisfy their discovery obligations or to abide by this Court's orders, an entry of default against Defendants is warranted.  Defendants' blatant refusal to produce documents that it admits exist and are in Defendants' custody or control is in direct violation of the Federal Rules of Civil Procedure, and Third Circuit precedent supports entry of default against Defendants under these circumstances.

### 1.  *Defendants failure to produce the documents identified in the Parties' Joint Stipulation violates the Federal Rules of Civil Procedure*

In refusing to produce the documents detailed in Exhibit A, Defendants are in violation of the Federal Rules of Civil Procedure—specifically Rule 34 and Rule 26.  Rule 34 requires that a party respond to a request for production of documents within 30 days, and parties have a duty to supplement their responses in a timely manner.  Fed. R. Civ. P. 34(b)(2)(A); Fed. R. Civ. P. 26(e)(1).  By failing to produce any of the documents listed in the parties' joint Stipulations, documents that Defendants admit exist and are either in their direct custody or over which they have control, Defendants are in direct violation of these rules.  Entry of a default for failure to comply with the Court's discovery orders and the Federal Rules of Civil Procedure is permitted, pursuant to Rule 37 sections (b)(2)(A)(vi), (c)(1)(C), and (d)(1)(A)(ii).  Since Defendants have failed to produce a page of discovery since the evening before the evidentiary hearing regarding Plaintiff's first Motion for Costs and Sanctions -- sanctions which were granted and have never been paid -- an entry of default is appropriate and just under these circumstances.

### 2.  *Entry of default against Defendants is warranted under Third Circuit precedent.*

This Court has the authority to control its docket and dismiss a case or, as would be appropriate here, enter default judgement as a sanction for failure to follow procedural rules or

court orders.  *Knoll v. City of Allentown*, 707 F.3d 406, 409 (3d Cir. 2013) (citations omitted); Fed. R. Civ. P. 37(b)(2)(A)(vi).  Dismissal and its counterpart, default judgment, are serious sanctions, but "[i]n certain cases, it is a necessary tool to punish parties who fail to comply with the discovery process and to deter future abuses."  *Hicks v. Feeney*, 850 F.2d 152, 156 (3d Cir. 1988) (citations omitted).  Moreover, the imposition of such a sanction is important not just to penalize a party whose conduct may warrant it, but also "to deter those who might be tempted to such conduct in the absence of such a deterrent."  *Mindek v. Rigatti*, 964 F.2d 1369, 1374 (3d Cir. 1992) (citing *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 642-43 (1975)).

The Third Circuit has repeatedly applied the same general analysis when reviewing sanction orders that deprive a party of the right to proceed with or defend against a claim:  (1) the extent of the *party 's* personal *responsibility*; (2) the *prejudice* to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a *history* of dilatoriness; (4) whether the conduct was *willful* or in *bad faith*; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of *alternative sanctions*; and (6) the *meritoriousness* of the claim or defense.  *Hicks*, 850 F.2d at 156 (emphasis in the original, citing the *Poulis* factors). Not all of the *Poulis* factors need to be satisfied in order for a court to dismiss a complaint or grant default judgment—the decision is made in the contest of the district court's extended contact with the litigant.  *Mindek*, 964 F.2d at 1373; *Hicks*, 850 F.2d at 156; *see also Miller v. Thompson-Walk*, 2019 WL 2150660, at *11 (W.D. Pa. May 17, 2019) (unpublished) (entry of default justified where Defendant was personally responsible for his failure to cooperate in discovery, Plaintiff was prejudiced, Defendant's conduct was in bad faith, lesser sanctions had been unsuccessful, and Defendant failed to establish any meritorious defenses).

i. *Defendants are wholly responsible for their failure to participate in discovery in good faith.*

It is undisputed that the documents that Plaintiff seeks are within Defendants custody or control (Exhibit A; Exhibit B, Exhibit C; *see* footnote 2, supra).  In response to Plaintiff's Motion for Costs and other Sanctions, the only reasons defense counsel offered for Defendants' repeated failure to produce documents in advance of Plaintiff's depositions were that Defendants were litigating other cases and that the document production was "complicated" and "voluminous" (ECF 34).  Nevertheless, counsel maintained that they were trying in good faith to respond to discovery and would continue to do so (ECF 34).  Defense counsel's insistence that Defendants have made good faith efforts to respond to Plaintiff's discovery requests and that the document production was burdensome is belied by testimony offered by Defendant Redmond and Defendants' 30(b)(6) witness during depositions that these documents were readily available.  (ECF 34; Exhibit b; Exhibit C).  Ultimately, Defendants have failed to produce time and pay records that are easily accessible, that they routinely review for other purposes, and that are routinely produced in FLSA litigation.

Defendants email payroll documents to their accountants each pay period so that they can prepare payroll, and those same emails could easily be produced to Plaintiff (Exhibit B at p.270-71; Exhibit C at p.32).  In fact, Defendants' 30(b)(6) witness was able to produce a sample of their internal payroll spreadsheets to Plaintiff's counsel during a short break in her deposition (Exhibit C at p.32).  Defendants can request reports from the Five9 system that logs every call their employees make, documents that Plaintiff could use in place of time records if Defendants failed to keep time records (Exhibit B at p. 246, 282).  Job offer letters stating each employee's rate of pay are contained in each employees' personnel file, files Defendant Redmond had access to and provided a sample of during his deposition (Exhibit B at p.270-71).  Defendants prepare

9

an internal paystub each pay period that shows hours worked and performance bonuses awarded (Exhibit C at p.20, 33-34; Exhibit B at p.270, 276).  Moreover, Defendants prepare and maintain memoranda documenting bonus opportunities for their employees, and daily sign-in sheets are kept in a binder by Defendants' HR Manager and which data she enters daily into the HR Bamboo software system (Exhibit C at p. 33-34, 77, 103-104).  The depositions therefore confirmed that all of these documents were readily available – yet Defendants have still not produced them. Given the availability of the documents requested and Defendants failure to articulate any plausible reason for continuing to withhold these relevant and accessible documents for the past six months, Defendants are clearly responsible for their failure to participate in discovery in good faith.

ii. *Defendants have effectively stalled this litigation, prejudicing Plaintiff's case and the underpaid employees owed their rightful wages.*

As Assistant District Director Jason Mowday testified during the hearing, Plaintiff needed Defendants' payroll records, records of hours worked, job offer letters, and records reflecting performance bonuses paid to Defendants' employees in order to prepare updated back wage computations and to spot-check those prepared during Wage and Hour's investigation. Plaintiff was forced to conduct a number of depositions without the requested documents, had to repeatedly postpone the 30(b)(6) depositions in this matter, and ultimately subpoenaed payroll documents from a non-party (Exhibit A; Exhibit D).  Since Plaintiff bears the burden of proof in this case, it is in Defendants' interest to stall and withhold documents.  If Defendants' payroll documents undermined the Department of Labor's claims in this case, no doubt they would have been produced when requested during the Department's investigation, or provided during the past 15 months of litigation.  Defendants have nothing to lose by continuing to draw out this case, but the employees who are being paid improperly and who are owed the back wages suffer

real harm while justice in this case is delayed.  Moreover, given the high rate of employee and executive turnover at Bene Market (something Defendants used as an excuse for their failure to produce these documents in their Response in Opposition to Motion for Sanctions, *see* ECF 34 at bullet 12), the longer this litigation goes on, the harder it will be for Plaintiff to locate witnesses and for witnesses to recall the facts pertinent to this case.  Defendants cannot be permitted to benefit from their blatant refusal to fulfil their discovery obligations.  Justice delayed is justice denied.

iii.   <em>Defendants remain undeterred in their dilatory conduct.</em>

Plaintiff served its discovery requests in this case on December 21, 2020 (Exhibit A). The initial deadline for the close of discovery was February 26, 2021—almost 10 months ago (ECF 8).  Moreover, Plaintiff has rescheduled the depositions in this case multiple times (*see* ECF 31; admitted by Defendants in ECF 34) as a result of Defendants' failure to produce the documents listed in the joint Stipulation (Exhibit A).  Defendants are occasionally spurred to action, such as producing a number of documents on the eve of the evidentiary hearing regarding Plaintiff's Motion for Costs and Other Sanctions, yet Defendants refuse to produce those documents most pertinent to this case—the payroll, time records (or equivalent), job offers with rate of pay, and paystubs—documents that would demonstrate Defendants' compliance or noncompliance with the Fair Labor Standards Act ("FLSA").  Defendants have been claiming for almost two years that documents their corporate counsel provided to Wage and Hour during the investigation were produced in error (*see* ECF 3, Defendants' Answer), and that it possesses payroll documents that will show no FLSA violation occurred—yet Defendants have never

produced these records.[4]  It seems clear that Defendants' dilatoriness is motivated by a desire to

forestall the inevitable finding of liability and entry of a judgment against them, perhaps because

Defendants now recognize the amount of money that they now owe to the employees they have

spent years underpaying.

iv.  *Defendants have acted in bad faith.*

Defendants have acted willfully and in bad faith by failing to produce the documents

listed in Exhibit A.  The vast majority of those documents are created and maintained by

Defendants, and those documents that are not in their possession are certainly within their

control (*see* Exhibits B and C).  Defendants have offered no explanation as to why they have

failed to produce any of the documents listed in Exhibit A over the past six months.  In

Defendants' Response in Opposition to Motion for Sanctions, filed on June 30, Defendants rely

on unsupported assertions that the documents are voluminous, complicated, and difficult to

locate, that they have three other ongoing litigation matters, and that they have acted in good

faith to respond to discovery and will continue to do so (ECF 34).  Apparently, Defendants'

"good-faith efforts" to respond to Plaintiff's discovery requests ended on June 29, 2021, because

they have not produced a single document since that time. Plaintiff's counsel has called and

emailed Defendants' counsel multiple times since the June 30 evidentiary hearing to request

production of the outstanding documents, reschedule the remaining 30(b)(6) depositions, and

request payment of the sanctions monies owed.  Plaintiff's counsel also forewarned defense

counsel weeks ago that she would file a motion for default if Defendants did not comply with the

---

[4] This alone indicates Defendants are trying to hide their FLSA violations, as it suggests that they maintain two sets of documents, a false set and a more accurate set.

12

Court's Order.  Despite these efforts, to date, Defendants have not produced a single document listed in the parties' Stipulations nor have they paid any of the sanctions money (Exhibit A).

The Secretary can only assume that Defendants are withholding these documents in order to hide the extent of their illegal pay practices—there is no other plausible explanation for Defendants' conduct.  Defendants also have no interest in a speedy resolution of this matter, given the amount of back wages that are currently owed.  Defendants have successfully stalled this litigation in attempt to forestall their employees from receiving their rightful wages, and the only appropriate sanction for Defendant's inexcusable conduct is to enter default against them and give Plaintiff the opportunity to file a Motion for Default Judgment with up-to-date back wage computations.

v.  *No sanction short of default will be effective.*

Despite this Court's Order that Defendants will incur a sanction of $5,000 for each week that they fail to produce all of the documents identified in the parties' joint Stipulation (Exhibit A), Defendants have not produced a single document nor have they paid a single penny of the $112,500 in sanctions that have accrued since this Court issued its Order on July 19, 2021.  It is clear that monetary penalties are no deterrent to Defendants.  Prior to the evidentiary hearing regarding Plaintiff's first Motion for Costs and Other Sanctions, Defendants had covered the cost of multiple depositions noticed by Plaintiff, which Defendants agreed to do after depositions were repeatedly rescheduled following Defendants' failure to produce timely and complete discovery responses (ECF 28, Exhibit A).  None of these financial consequences have persuaded Defendants to fulfil their discovery obligations, and Defendants continue to accrue back wages and monetary sanctions that they will ultimately claim they lack the funds to pay.  It is clear, given the non-existent efforts that Defendants have made to comply with this Court's orders, and

13

their refusal over the past six months to participate in discovery, that no sanction short of default will be effective.

vi. *Defendants lack any meritorious defense.*

Defendants' only defense to this case is the suspicious claim that the payroll records produced during the Department of Labor's investigation were "internal work product" provided to the Department of Labor by a former employee (i.e. corporate counsel), and that they were not accurate payroll records (*see* ECF 3, item 17). Significantly, in the almost 15 months since they filed their Answer, Defendants have **<u>never</u>** produced alternate payroll records showing their compliance with the FLSA, presumably because such records do not exist. As such, Plaintiff will undoubtedly prevail on the merits should this case go to trial. Entering default against Defendants now and permitting Plaintiff to file a Motion for Default Judgment will at least force Defendants to pay their employees the monies they are owed and prevent this litigation from consuming what remains of Defendants' financial resources.

## I. Relief Sought

As warranted by Defendants' outrageous conduct in this case, Plaintiff respectfully requests that this Court order the Clerk to enter default against Defendants and that Plaintiff be permitted until January 28, 2022 to submit a Motion for Default Judgment requesting the award of back wages and liquidated damages to Defendants' underpaid employees, as well as injunctive relief barring any Defendants from committing future FLSA violations.

Respectfully submitted,

Seema Nanda
Solicitor of Labor

Post Office Address:

Oscar L. Hampton III
Regional Solicitor

Oscar L. Hampton III
Regional Solicitor
Office of the Solicitor
U.S. Department of Labor
1835 Market Street
Philadelphia, PA 19103
Fax: (215) 861-5162

*/s/ Jennifer L. Bluer*
Jennifer Bluer
Trial Attorney
PA Bar 307299
bluer.jennifer.l@dol.gov
(215) 861-5146

Date:  12/23/2021

U.S. DEPARTMENT OF LABOR
Attorneys for Plaintiff