**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| MARTIN J. WALSH, SECRETARY OF LABOR, UNITED STATES DEPARTMENT OF LABOR, ) ) ) | |
| Plaintiff, ) | Civil Action No.  5:20-cv-04265 |
| ) | |
| v. ) | |
| ) | JURY TRIAL DEMANDED |
| BENE MARKET, LLC, NATIONAL BROKERS OF AMERICA, INC., ALAN REDMOND, and STEPHANIE MILLER ) ) ) | |
| ) | |
| Defendants. ) | |
| ) | |

**PLAINTIFF'S REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S SECOND
MOTION FOR SANCTIONS**

Plaintiff submits this Reply to Defendants' Opposition, filed on January 13, 2022,[1]

following the most recent status conference held in this matter, to address inaccuracies in

Defendants' pleading.  In light of the ineffectiveness of lesser sanctions, the lack of any

meritorious defense, and the severe prejudice that Plaintiff and Defendants' underpaid employees

have suffered from Defendants' discovery violations, Plaintiff respectfully requests that this

Court grant Plaintiff's Motion, enter default against Defendants, and permit Plaintiff to file a

Motion for Default Judgment.  In the alternative, should the Court rule that default is not

appropriate, Plaintiff moves for the imposition of additional sanctions, asks that discovery be

reopened for the limited purpose of allowing Plaintiff to conduct additional depositions, and

---

[1] By Plaintiff's calculation, Defendants' response was due on January 6, 2022, 14 days after
Plaintiff filed its Second Motion for Sanctions. Defendants' opposition was therefore untimely.

requests that Defendants be ordered to cover the cost of any further depositions taken by Plaintiff.[2]

**I. Defendants' factual assertions are unsupported by affidavits or any other evidence.**

As a preliminary matter, in their Opposition brief, (ECF No. 47), counsel makes a number of bare assertions regarding Defendants' good-faith efforts to participate in discovery—assertions that are unsupported by affidavits or other verifiable evidence.  Defendants also quote from their reply to Plaintiff's Motion for Costs and Other Sanctions (ECF 34), a pleading that was also submitted without affidavits or any other supporting evidence.  Defendants even ask the Court to take their word that Plaintiff has not suffered "any real prejudice," simply because they have now begun to produce large numbers of documents after the close of discovery.  This is simply not true.  The Court should give no credence to such self-serving and unsupported statements.

**II. Defendants made a number of inaccurate and misleading statements in their opposition.**

*1. Defendants have not participated in discovery in good faith.*

It is impossible to find that Defendants have participated in discovery in good faith, considering that discovery has been ongoing for over a year and Defendants have yet to produce basic documents such as time records or all the relevant sign-in sheets.  It is undisputed that Defendants did not produce a single page of documents between the June 30, 2021 hearing

---

[2] Defendants previously committed to covering the cost of any depositions that were postponed due to Defendants' failure to produce documents requested in discovery or to produce a witness or witnesses competent to testify to all areas of inquiry listed on Plaintiff's 30(b)(6) deposition notice.  *See* ECF 28, (Defense Motion to Extend Deadline for Discovery) and ECF 34, (Defendants Reply to Plaintiff's Motion for Costs and Other Sanctions, admitting in paragraph 9 that it had agreed to produce an additional two 30(b)(6) witnesses and to cover the costs of those depositions).

regarding Plaintiff's first Motion for Costs and Other Sanctions and the day before the January 13, 2022 status conference.  Defendants did not request an extension, communicate any difficulties regarding the availability of documents[3], or produce those documents that were most readily available to them.  In short, Defendants did nothing for over six months while the amount of sanctions monies that they owed accumulated.  That Defendants have gathered and produced a large number of documents in the space of two weeks since retaining new counsel severely undermines Defendants' assertion that they have participated in discovery in "good faith."

Defendants repeatedly refer to the number of pages of discovery that they have produced throughout this litigation, a number that given the haphazard and piecemeal way these documents were produced, it is difficult to confirm or deny.  It is also misleading to refer to the number of pages produced as evidence of good faith participation in discovery, when there are important categories of documents that are still outstanding.

Despite this recent production, Defendants still have failed to produce time records, all of the relevant sign-in sheets and offer letters, and internal paystubs *created by Defendants* that state hours worked and bonuses earned per pay period (Plaintiff is still reviewing the recent production to determine what documents are still outstanding). These are the records that are most pertinent to this matter and those that would most quickly move this case along.  Despite Defendants' new-found interest in responding Plaintiff's discovery requests, Defendants' repeated failure to produce these basic documents completely undermines their assertions of good faith.

---

[3]The fact that many of the documents at issue were created by, maintained by, and were readily available to Defendants throughout this litigation is addressed in Plaintiff's Second Motion for Sanctions.  Plaintiff has been waiting a full year for Defendants to produce their own documents.

Moreover, that Defendants waited until more than two months after the close of discovery to produce documents that Plaintiff had repeatedly requested, Defendants agreed to produce (*see* Exhibit 1 to Plaintiff's Second Motion for Sanctions, Joint Stipulation), and for which Plaintiff repeatedly postponed and rescheduled depositions for, highlights the lack of good faith with which Defendants have conducted themselves throughout this litigation.

2.  *Defendants falsely claim that they owe just $2,500 in sanctions.*

Throughout their opposition, Defendants' inexplicably claim that they owe just $2,500 in sanctions, but that is simply not the case.  Per this Court's July 19, 2021 Order imposing sanctions, Defendants owe $2,500 for the costs Plaintiff incurred filing discovery motions **and $5,000 per week** "until **all documents** listed in the parties' stipulation are produced to Plaintiff" (ECF 38, emphasis added).  Defendants bizarrely argue that Plaintiff "focuses on the fact that Defendants have failed to pay Plaintiff $2,500 to cover costs for filing discovery motions pursuant to the Court's July 19, 2021 Order," when in fact Plaintiff repeatedly pointed out in its Second Motion for Sanctions that as of December 23, 2021, Defendants owed $112,500.[4] Defendants' lack of candor regarding the amount of sanctions monies owed in this matter is disconcerting.  Defendants are essentially asking the Court to ignore its own orders regarding the sanctions it has imposed for Defendants' repeated discovery violations, because it has now decided to produce large numbers of documents it agreed to produce six months ago, now that discovery has closed.

---

[4] The Court ordered Defendants to pay Plaintiff $2,500 to cover costs for filing discovery motions, and $5,000 per week for each week Defendants failed to produce the documents listed in the joint Stipulation (Exhibit A to Plaintiff's Motion), beginning on Friday, July 23, 2021. Twenty-two weeks had passed between July 23, 2021, and the filing of Plaintiff's Motion on December 23, 2021. Therefore, Defendants owed Plaintiff $112,500 in sanctions, $5,000 x 22 + $2,500 at the time Plaintiff's Motion was filed.

Defendants argue, in a footnote and without any supporting evidence, that Plaintiff's claim to the full amount of sanctions owed would be inequitable and would lead to the "absurd result" of a discovery sanction that rivals Defendants' potential liability in this case (ECF 47, footnote 1). It is not clear what Defendants base this assertion on,[5] nor is it relevant. More importantly, the amount of sanctions owed in this case was and continues to be completely within Defendants' control. To date, Defendants owe $135,000 in sanctions monies, $5,000 for each of the 27 weeks that Defendants have failed to produce all of the documents that were the subject of the Court's July 19, 2021 Order regarding sanctions (ECF 38) (Plaintiff has received a check to cover the $2,500 they committed to paying "immediately" in their opposition).

   3. *Defendants' assertion that they have recently produced thousands of documents establishing a meritorious defense is baseless.*

Defendants make the extraordinary claim that they have produced thousands of pages of documents that establish a meritorious defense in this case (ECF 47 at 7). Surprisingly, they do not identify what their defense is or explain how these documents prove that their pay practices complied with the Fair Labor Standards Act ("FLSA"). Since the violations at issue in this case were evident from the face of the records produced by Defendants during the Wage and Hour Division's investigation, Defendants' dubious claim of a meritorious defense lacks credibility.

Defendants engaged in rate manipulation in order to disguise the fact that they pay straight time for all hours worked—a practice that violates Section 7 of the FLSA. Most of the back wages owed in this case stem from this practice. A standard workweek at Bene Market was 50 hours per week. When employees worked more or less than 50 hours in a workweek,

---

[5] In Plaintiff's initial disclosures served on October 20, 2020, Plaintiff estimated that Defendants' liability in this case was well over $500,000, and if Defendants have not amended their pay practices, that amount will be sizably larger now.

Defendants adjusted the employees' hourly rates to make it look like they were paying overtime rates for hours worked over 40, when in fact they were paying straight time for all hours worked, as shown in the following example

According to Defendants' payroll records, employee Keury Almonte worked 100 hours in the pay period ending 01/05/2019 (page 1 of Exhibit A), 76 hours in the pay period ending 02/02/2019 (page 2 of Exhibit A), and 90 hours in the pay period ending 02/16/2019 (page 3 of Exhibit A, Defendants' payroll worksheets).[6] For each of those pay periods, Defendants list a different hourly rate for Almonte (Exhibit A). Moreover, when the hourly rate listed in Defendants' payroll records is used to calculate Almonte's gross pay, the numbers do not match the amount that Almonte was actually paid—there is always a number of cents difference. When Almonte worked less than 50-hours in a workweek, the hourly rate on Defendants' payroll records changed. Nevertheless, when Almonte's gross pay is divided by the number of hours worked each pay period, the math shows that Defendants actually paid Almonte $12 per hour for all hours worked, including any overtime, in each of these pay periods (*Id.*). This is evidence of rate manipulation.

In the pay period ending 01/05/2019 (page 1 of Exhibit A), Almonte's hourly rate is listed as $10.91. During that pay period, Almonte worked 50 hours per work week, 100 hours total, and received gross pay of $1,200 for the two-week pay period. This amounts to 80 hours of work that should have been paid the regular rate of $10.91 per hour, and 20 hours that should be paid at 1.5 times the regular rate, or $16.37 per hour. If Defendants actually paid this

---

[6] Please note that the title that appears at the top of each page of Exhibit A refer to the incorrect pay period on pages 1 and 3. It appears that Defendants did not update this caption from the prior pay period in two of the three sampled pay periods. The pay periods listed above are taken from data in Defendant's payroll spreadsheets.

employee the hourly rate stated in their payroll records, his gross pay would have been $1,200.20 ([$10.91 x 80] + [$16.37 x 20] = $1,200.20).  It is not possible to multiply Almonte's hourly rate and overtime rate by hours worked to generate his gross pay—the numbers simply do not work.  However, if we divide Almonte's gross pay by 100 (the number of hours worked this pay period), we see the employee was actually paid $12 for all hours worked this pay period.  The amount listed as Almonte's regular rate was calculated after the fact, in order to create the appearance that Defendants paid an overtime premium.

In pay the pay period ending 02/02/2019 (page 2 of Exhibit A), Almonte's hourly rate is listed as $11.26 per hour.  The employee worked 26 hours in one work week, 50 hours in the next, resulting in 10 hours of work that should have been paid at the overtime premium.  If we use the hourly rate of $11.26 that is listed in Defendants' payroll records, the employee should have been paid $912.06 ([$11.26 x 66] + [$16.89 x 10] = $912.06).  Again, it is not possible to multiply to generate the number listed as gross pay in Defendants' payroll records using the hourly rate shown in Defendants' payroll records.  However, if we divide Almonte's gross pay of $912.00 by 76, we see he was paid $12 per hour for all hours worked.

Finally, for the pay period ending 02/16/2019 (page 3 of Exhibit A), Almonte worked 90 hours during this pay period, 40 hours in one work week and 50 hours in the other, and his gross pay was $1,080 for this pay period.  Defendants list the employee's hourly rate for this pay period as $11.37 per hour.  If Defendants actually paid this employee the hourly rate stated in their payroll records, his pay would have been $1,080.15 for the pay period ([$11.37 x 80] + [$17.06 x 10] = $1,080.15).  However, $1,080.00 gross pay divided by 90 hours worked gives us a rate of $12 per hour for all hours worked.

This is just an example of one of Defendants' violative pay practices.  Defendants also violated the minimum wage provisions of the FLSA during some work weeks and failed to incorporate employee bonuses in the employees' overtime rates.  Defendants cannot establish a meritorious defense using recently produced documents, because the violations at issue can be found on the face of the records.   If anything, the newly produced documents will be further evidence of Defendants' illegal pay practices.  Moreover, per the Court's July 19, 2021 Order, Defendants are barred from using any documents produced after July 30, 2021 in their defense (ECF 38).

### III.  Defendants have severely prejudiced Plaintiff by their belated production of thousands of documents <u>after</u> the close of discovery.

Defendants have prejudiced their employees who have been deprived of their lawful wages over the course of the past five years, because of Defendants' delay tactics and refusal to participate in discovery in good faith.  These relatively low-paid workers cannot be made whole until this litigation is concluded.  Defendants' culpable conduct has had a very real impact upon Plaintiff's ability to effectively litigate this case and obtain a timely recovery for Defendants' underpaid employees.

Moreover, and contrary to Defendants' assertions, Plaintiff has suffered very real prejudice from Defendants' waiting until after the close of discovery to begin producing the outstanding documents.  Plaintiff conducted seven depositions in this case without having access to much of the pertinent evidence (*see* Exhibit A to Plaintiff's Second Motion for Sanctions). Plaintiff was unable to fully examine those witnesses already deposed, without access to the documents most relevant to the claims and defenses in this case, namely Defendants' time records, internal pay stubs showing hours worked and incentive pay, offer letters establishing employees' rate of pay, and payroll records for the full relevant period.  Moreover, Defendants

failed to produce a 30(b)(6) witness competent to testify to all of the topics listed in the 30(b)(6) notice, and committed to producing the outstanding documents and covering the cost for two days of 30(b)(6) depositions, during which Defendants' witnesses would explain and authenticate these records (*see* ECF 28 and 34).  Now that discovery has closed, and in the face of a second motion for sanctions, Defendants are suddenly able to produce documents that should have been produced a year ago.  Plaintiff is undoubtedly prejudiced by Defendants' belated attempts to fulfil its discovery obligations, at a time when Plaintiff is foreclosed from questioning its witnesses about these large swaths of documents.

### IV. Defendants' opposition shows that alternative sanctions were ineffective, and that default is warranted.

It is clear from the fact that Defendants waited over six months to produce any of the documents that are the subject of this Court's Order imposing sanctions, that lesser sanctions have been ineffective in this matter (at the time Plaintiff's Second Motion for Sanctions was filed, no documents had been produced since the sanctions hearing on June 30, 2021).  Moreover, Defendants' insistence that the majority of the monetary sanctions imposed by this Court are not owed by Defendant merely emphasizes just how ineffective lesser sanctions have been.  Not only do Defendants now owe $135,000 in sanctions, an amount that continues to increase by $5,000 each week until they satisfy their discovery obligations (ECF 38), they are also barred from using any documents produced after July 30, 2021 in their defense.  Despite the seriousness of these sanctions, Defendants did not produce a single document between June 30, 2021 and January 12, 2022.  Lesser sanctions simply have not worked.

### IV.  Additional sanctions should be imposed if the Court declines to enter default.

Should this Court decline to grant Plaintiff's motion and enter default against Defendants, Plaintiff respectfully requests the imposition of additional sanctions to address Defendants'

dilatory conduct—namely, that Defendants be barred from calling witnesses, raising any affirmative defenses, or offering any evidence in their defense at trial.  In addition, discovery should be reopened for the limited purpose of allowing Plaintiff to conduct the long-delayed 30(b)(6) depositions, once Defendants have produced all outstanding discovery and Plaintiff's counsel has had an opportunity to review it.  Defendants should be required to cover the costs for the depositions and Plaintiff's copies of the transcripts, as they previously committed to do (*see* ECF 28, ECF 34).

**IIIV.  Conclusion.**

Defendants' repeated failure to participate in discovery in good faith has prejudiced Plaintiff's litigation of this case and prejudiced the employees who are owed their rightful wages—such culpable conduct should not be excused or ignored.  Moreover, since Defendants cannot establish a meritorious defense to their unlawful pay practices, and as lesser sanctions have been wholly ineffective, Plaintiff requests that the Court grant its Second Motion for Sanctions and that default be entered against Defendants and permit Plaintiff 60 days to submit a Motion for Default Judgment.  However, if this Court declines to impose default, Plaintiff requests the imposition of additional sanctions, as described in section IIV of this Reply.

Respectfully submitted,

Seema Nanda
Solicitor of Labor

Post Office Address:

Oscar L. Hampton III
Regional Solicitor

Oscar L. Hampton III
Regional Solicitor
Office of the Solicitor
U.S. Department of Labor
1835 Market Street
Philadelphia, PA 19103
Fax: (215) 861-5162

*/s/ Jennifer L. Bluer*
Jennifer Bluer
Trial Attorney
PA Bar 307299
bluer.jennifer.l@dol.gov
(215) 861-5146

Date:  01/27/2021

U.S. DEPARTMENT OF LABOR
Attorneys for Plaintiff